UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
PAMELA BAILEY D/B/A MORE THAN    )
OUR CRIMES,                                       )
                                                      )
                    Plaintiff,                        )
                                                      )
            v.                                          )          Civil Action No. 24-1219 (PLF)
                                                      )
FEDERAL BUREAU OF PRISONS,           )
                                                      )
                    Defendant.                      )
_____)


OPINION

            Pamela Bailey is an advocate for federal prison reform who uses the Bureau of

Prisons (the "BOP") electronic messaging system to communicate with numerous federal

inmates.  She uses the information she receives from inmates to inform her advocacy, often by

simply disseminating inmates' stories in their own words.  According to Ms. Bailey, the BOP has

engaged in a campaign to silence her by blocking her from exchanging electronic messages with

inmates at seven BOP facilities.  Before the Court is Ms. Bailey's Motion for Preliminary

Injunctive Relief [Dkt. No. 2].  The Court heard oral argument on the motion on June 13, 2024.

Because Ms. Bailey has clearly shown that she is entitled to preliminary injunctive relief for one

of her claims with respect to some facilities – but not for her other claims or with respect to all

seven facilities – the Court will grant her motion in part for the reasons set forth in this Opinion.[1]

_____

            [1]       The papers reviewed by the Court in connection with this matter include:
Verified Complaint ("Compl.") [Dkt. No. 1]; Plaintiff's Motion for Preliminary Injunctive Relief
("Pl.'s Mot.") [Dkt. No. 2]; Memorandum of Law in Support of Plaintiff's Motion for
Preliminary Injunctive Relief ("Pl.'s Br.") [Dkt. No. 2-1]; Defendant's Response to Plaintiff's

## I.  BACKGROUND

Ms. Bailey is the co-founder of More Than Our Crimes, an unincorporated nonprofit organization whose mission is to reform the federal prison system.  Compl. ¶¶ 2, 5.  Through this organization, Ms. Bailey circulates first-person accounts of life in prison and advocates for reform via publications, outreach, and events.  Id. ¶ 5.  To do this work, Ms. Bailey relies on personal relationships with inmates, which she develops through regular communication with them.  Id. ¶ 25.  While Ms. Bailey sometimes speaks to inmates on the phone or visits them in person, she more often uses the prison electronic messaging system.  Id.

This electronic messaging system is a part of the Trust Fund Limited Inmate Computer System, or "TRULINCS."  Compl. ¶ 6.  TRULINCS provides the only electronic messaging system that inmates are allowed to access and, according to Ms. Bailey, the only timely way to communicate with them.  Id. ¶ 143.  The BOP's Trust Fund/Deposit Fund Manual contains its rules governing TRULINCS use.  See FED. BUREAU OF PRISONS, PROGRAM STATEMENT – TRUST FUND/DEPOSIT FUND MANUAL (Mar. 14, 2018), www.bop.gov/policy/ progstat/4500.12.pdf [hereinafter BOP TRUST FUND MANUAL].[2]  When messaging the public, inmates must create a contact in the TRULINCS system and request to exchange messages with the contact before they can do so.  Id. § 14.10(c)(3), at 134.  Inmates are allowed no more than 30 active messaging contacts.  Id.  The BOP monitors TRULINCS messages and has the ability to block inmates' or non-inmates' access to TRULINCS.  The BOP can block a non-inmate from

---

Motion for Preliminary Injunctive Relief ("Gov't Br.") [Dkt. No. 10]; and Plaintiff's Reply in Support of Motion for Preliminary Injunctive Relief ("Pl.'s Reply") [Dkt. No. 12].

[2]      Aside from email, TRULINCS provides inmates with several other computer services, like an electronic bulletin board, an electronic law library, the ability to print postal labels, and the ability to buy music.  See BOP TRUST FUND MANUAL § 14.10, at 132-39.

communicating with specific inmates, from communicating with all inmates at a BOP facility, or from communicating with all inmates at all BOP facilities.  Id. § 14.10(c)(3)(c), at 135.  The Trust Fund/Deposit Fund Manual states that "[s]upporting documentation for blocking email addresses are scanned into" the BOP's internal electronic system.  Id.

   Ms. Bailey describes a pattern of BOP facilities blocking her ability to exchange TRULINCS messages with inmates at those facilities after she has engaged in advocacy critical of the BOP or exchanged messages with inmates at those facilities discussing alleged BOP abuses.  See Pl.'s Br. at 4-5.  In August 2022, the BOP blocked Ms. Bailey from TRULINCS messaging at F.C.I. Ray Brook in New York.  Compl. ¶ 57.  Ms. Bailey sent a letter to the facility's warden appealing the decision, and the warden responded that inmates had added her to their approved contact list without using her full, correct name.  Id. ¶ 59.  In September 2022, More Than Our Crimes, in collaboration with the Washington Lawyers' Committee for Civil Rights and Urban Affairs, published a report that included first-person accounts by inmates and proposals for reform of the BOP.  Id. ¶ 49; see Pl.'s Ex. 1 [Dkt. No. 2-2 at ECF 4-43].  This report was featured in the Washington Post's local news section.  See Theresa Vargas, They're in Federal Prison, and They're Done Staying Quiet, WASH. POST (October 1, 2022), https://wapo.st/4cwXBFU.

   In December 2022, the BOP blocked Ms. Bailey from communicating with inmates at U.S.P. Big Sandy in Kentucky.  Compl. ¶ 61; see Pl.'s Ex. 2 [Dkt. No. 2-2 at ECF 44-45].  Ms. Bailey appealed the decision to the facility's warden that same month, but received no response.  Compl. ¶¶ 64, 65; see Pl.'s Ex. 3 [Dkt. No. 2-2 at ECF 46-48].  In March 2023, Ms. Bailey sent a letter to the BOP's Regional Director for the Mid-Atlantic Region requesting that the BOP stop blocking her, or that it appropriately explain its reasoning for

continuing to block her.  Compl. ¶ 66; <u>see</u> Pl.'s Ex. 4 [Dkt. No. 2-2 at ECF 49-50].  Later that

month, the Regional Director wrote to Ms. Bailey that the BOP had "determined [her] email

address was used as a median[ and]/or paid service to forward messages to other email addresses

and/or other messaging services" and that she was blocked "to prevent the circumvention and

misuse of the TRULINCS system."  Pl.'s Ex. 5 [Dkt. No. 2-2 at ECF 51-53].  Also in March

2023, the BOP blocked Ms. Bailey from using TRULINCS to message inmates at U.S.P.

Beaumont in Texas.  Compl. ¶¶ 84, 85.  This block came after Ms. Bailey sent a message to an

inmate at Beaumont explaining her intent to engage in advocacy critical of another BOP facility.

<u>Id</u>.

In September 2023, a group of U.S. Senators sent a letter to the U.S. Attorney

General, Deputy Attorney General, and the Director of the BOP, asking for an investigation of

the F.C.C. Hazelton facility in West Virginia.  Pl.'s Ex. 12 [Dkt. No. 2-2 at ECF 110-13].  This

letter cited the More Than Our Crimes report published a year earlier, as well as a more recent

More Than Our Crimes publication specifically about that facility.  <u>Id</u>. at ECF 112 nn.2-5.  In

October 2023, the U.S. Attorney's Office for the Northern District of West Virginia created a

hotline for information related to civil rights abuses at Hazelton.  Pl.'s Ex. 14 [Dkt. No. 2-2 at

ECF 116-20].  After learning from inmates at Hazelton that they were not able to use the hotline,

Ms. Bailey met with members of the U.S. Attorney's Office and the Office of the Inspector

General.  Compl. ¶ 93.  In November 2023, the BOP blocked Ms. Bailey from communicating

with inmates at F.C.C. Hazelton.  <u>Id</u>. ¶ 94; <u>see</u> Pl.'s Ex. 13 [Dkt. No. 2-2 at ECF 114-15].

In March 2024, the BOP blocked Ms. Bailey from using TRULINCS to message

two inmates at U.S.P. Marion in Illinois.  Compl. ¶ 121; <u>see</u> Pl.'s Ex. 15 [Dkt. No. 2-2 at

ECF 121-123].  That same month, the BOP blocked her at F.C.I. Pekin in Illinois,

Compl. ¶¶ 127, 129; see Pl.'s Ex. 16 [Dkt. No. 2-2 at ECF 124-125], and at U.S.P. Florence-High in Colorado.  Compl. ¶¶ 132, 133.

    In addition to records documenting these TRULINCS blocks, Ms. Bailey has submitted declarations from inmates at some of the facilities describing punishments and threats they received from correctional officers, seemingly in connection with the inmates' communication with her.  These include threatening to send an inmate to solitary confinement, alter his release date, and allow another officer to beat him if he refused to remove Ms. Bailey as one of his TRULINCS contacts, Decl. of Leonard Schenk [Dkt. No. 2-3] ¶¶ 9-13; confining an inmate to the Special Housing Unit after questioning the inmate about Ms. Bailey, Decl. of Cory Perry [Dkt. No. 2-6] ¶¶ 10-16; ordering an inmate to get other correctional officers' names removed from a More Than Our Crimes publication, Decl. of Jeremy Fontanez [Dkt. No. 2-4] ¶¶ 11-13; and firing inmates from their jobs.  Decl. of Joel Vasquez [Dkt. No. 2-5] ¶¶ 8-11.

    The government does not dispute that it blocked Ms. Bailey from using TRULINCS messaging at any of these facilities.  It asserts, however, that its reason for doing so was not Ms. Bailey's advocacy, but instead the fact that she violated TRULINCS rules.  According to the government, Ms. Bailey violated the rules in three ways:  First, by passing messages from inmates to unapproved third-party contacts. Gov't Br. at 11.  The government attaches four examples, all from December 2022, of inmates at U.S.P. Big Sandy using TRULINCS to send messages to Ms. Bailey for her to forward to third parties.  Gov't Ex. 3 [Dkt. No. 10-3] at ECF 2-6; see Gov't Br. at 6; Pl.'s Reply at 10.  These examples include one response from Ms. Bailey indicating that she forwarded a message and another response from Ms. Bailey asking for clarification regarding for whom the inmate's message was intended.  Gov't Ex. 3 at ECF 2-3.  Second, by passing messages from inmates to other inmates.  Gov't Br.

at 10.  The government attaches one example of Ms. Bailey transmitting messages between

inmates.  Gov't Ex. 2 [Dkt. No. 10-2].  This example comes from May 2024, after Ms. Bailey

filed this lawsuit.  Id.  And third, by compensating inmates for their correspondence with her.

Gov't Br. at 11-12.  The government attaches three examples – two from December 2022 and

one from May 2024 – of Ms. Bailey discussing payments with inmates.  Gov't Ex. 3 at ECF 2;

id. at ECF 8; Gov't Ex. 4 [Dkt. No. 10-4].  The government also attaches a May 2024 message in

which Ms. Bailey tells an inmate that "the BOP has dug up all those instances when I passed

messages between you and others," that "[w]e have to be more aware of their rules," and that

"[w]e can't violate the[ BOP's rules] and then go after them for doing the same."  Gov't Ex. 1

[Dkt. No. 10-1].

          On April 24, 2024, Ms. Bailey filed her complaint in this case.  She brought six

counts:  a First Amendment restriction-of-speech claim, a First Amendment retaliation claim, a

Fifth Amendment procedural due process claim, two Administrative Procedure Act ("APA")

claims, and a claim for declaratory judgment.  See Compl. ¶¶ 134-172.  As relief, she seeks an

injunction restoring her TRULINCS access at all BOP facilities, prohibiting the BOP from

limiting her TRULINCS access absent "a specific, factual determination of misconduct" and

prior court approval, and prohibiting the BOP from interfering with her communication with

inmate sources or retaliating against them.  Id. at 39-40.  On the same day that Ms. Bailey filed

her complaint, she filed a motion for a preliminary injunction.  See Pl.'s Mot.  The scope of the

preliminary injunction requested is the same as the scope of the permanent injunction requested

in the complaint.  Id. at 1.  The government filed an opposition to Ms. Bailey's motion on

May 23, 2024.  See Gov't Br.  Ms. Bailey replied on June 5, 2024.  See Pl.'s Reply.[3]  On

June 13, 2024, the Court held oral argument on Ms. Bailey's motion.

## II.  LEGAL STANDARD

A movant seeking preliminary injunctive relief must make a "clear showing that

four factors, taken together, warrant relief:  likely success on the merits, likely irreparable harm

in the absence of preliminary relief, a balance of the equities in its favor, and accord with the

public interest."  Archdiocese of Washington v. Wash. Metro. Area Transit Auth., 897 F.3d 314,

321 (D.C. Cir. 2018) (quoting League of Women Voters of the United States v. Newby, 838 F.3d

1, 6 (D.C. Cir. 2016)); see also Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (noting

that a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is

entitled to such relief" (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008))).

Of these, the most important factor is whether a movant has established a likelihood of success

on the merits.  See Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014).

Before the Supreme Court's decision in Winter, courts in this Circuit weighed

these four factors on a "sliding scale," under which the movant need not "make as strong a

showing" on one factor if they "make[] an unusually strong showing" on another.  Davis v.

---

3       As the government pointed out at oral argument, the supplemental declarations
submitted by Ms. Bailey with her reply brief are not properly before the Court.  See Decl. of Pl.
Pamela Bailey [Dkt. No. 12-2]; Suppl. Decl. of Cory Perry [Dkt. No. 12-3].  Under the Local
Civil Rules of this Court, applications for a preliminary injunction "shall be supported by all
affidavits on which the plaintiff intends to rely" and "[s]upplemental affidavits either to the
application or the opposition may be filed only with permission of the court."  LOCAL CIVIL
RULE 65.1(c).  Ms. Bailey did not seek leave of court to file the declarations submitted with the
reply.  "The Court has nonetheless reviewed the attached declarations and finds that
consideration of the assertions set forth therein does not alter its decision as set forth below."
Sataki v. Broad. Bd. of Governors, 733 F. Supp. 2d 1, 9 n.11 (D.D.C. 2010); see also Navajo
Nation v. Azar, 292 F. Supp. 3d 508, 511 n.2 (D.D.C. 2018).

Pension Benefit Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009) (quoting Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999)); accord Damus v. Nielsen, 313 F. Supp. 3d 317, 326 (D.D.C. 2018).  This Circuit has suggested, however, that "a likelihood of success" and "a likelihood of irreparable harm" are "independent, free-standing requirement[s] for a preliminary injunction."  Sherley v. Sebelius, 644 F.3d at 392-93 (quoting Davis v. Pension Benefit Guar. Corp., 571 F.3d at 1296 (Kavanaugh, J., concurring)); see Archdiocese of Washington v. Wash. Metro. Area Transit Auth., 897 F.3d at 334 (declining to resolve whether the "sliding scale" approach is still valid after Winter).  Regardless, "a failure to show a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion." Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (citing Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009)); see also M.G.U. v. Nielsen, 325 F. Supp. 3d 111, 117 (D.D.C. 2018).

### III.  ANALYSIS

The Court will separately analyze each of the claims on which Ms. Bailey bases her motion for preliminary injunctive relief.  These include all of the claims Ms. Bailey listed in her complaint, with the exception of the Declaratory Judgment Act claim.  For each of her claims, Ms. Bailey bears the burden of persuasion.  Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).  She also "bears the burden of producing credible evidence sufficient to demonstrate her entitlement to injunctive relief."  Workman v. Bissessar, 275 F. Supp. 3d 263, 267 (D.D.C. 2017).

### A.  First Amendment – Blocks of TRULINCS Messaging

The BOP has restricted Ms. Bailey's communication with some of her inmate sources by blocking her as a TRULINCS contact at seven BOP facilities.  At most of these facilities, Ms. Bailey alleges – and the government does not dispute – that the blocks were facility-wide.  See Compl. ¶ 156.  In other words, the effect of the blocks was that Ms. Bailey could not message any inmate at the facility, and no inmate at the facility could message Ms. Bailey.  Ms. Bailey argues that these restrictions were content-based because they were intended to prevent her from gathering and publishing criticism of the BOP and information supporting that criticism.  Pl.'s Br. at 21-22.

The parties differ in their view of which framework governs the Court's analysis of this First Amendment claim.  Ms. Bailey argues that the correct standard comes from Procunier v. Martinez, 416 U.S. 396 (1974), a case in which the Supreme Court held unconstitutional a California regulation censoring inmate correspondence.  Id. at 415-16; see Pl.'s Br. at 24-25.  The government maintains that the Court should analyze the claim under Turner v. Safley, 482 U.S. 78 (1987), a case in which the Supreme Court upheld, against constitutional challenge, a Missouri prison regulation prohibiting most inmate-to-inmate correspondence.  Id. at 93; see Gov't Br. at 13.

Martinez requires that the challenged BOP practice or regulation "further an important or substantial governmental interest unrelated to the suppression of expression" and that "the limitation of First Amendment freedoms . . . be no greater than is necessary or essential to the protection of the particular governmental interest involved."  Procunier v. Martinez, 416 U.S. at 413-14.  Turner, by contrast, requires only a "legitimate governmental interest" and a "'valid, rational connection' between" the challenged BOP practice or regulation and that

interest. Turner v. Safley, 482 U.S. at 89 (quoting Block v. Rutherford, 468 U.S. 576, 586 (1984)). Turner also requires the Court to consider "whether there are alternative means of exercising the right that remain open to prison inmates"; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "[t]he existence of obvious, easy alternative[]" regulations or actions that could "fully accommodate[] the prisoner's rights at de minimis cost to valid penological interests." Id. at 90-91.

A third Supreme Court case, Thornburgh v. Abbott, 490 U.S. 401 (1989), dictates when courts must apply Martinez and when they must apply Turner in analyzing restrictions on inmate correspondence. In Thornburgh, the Supreme Court found no First Amendment problem with a BOP regulation allowing the warden of a federal facility to reject an inmate's attempt to subscribe to a publication if the publication was "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." Thornburgh v. Abbott, 490 U.S. at 404 (quoting federal regulation). The Supreme Court held that "Martinez' less deferential approach . . . was not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." Thornburgh v. Abbott, 490 U.S. at 409-10. For this reason, the Supreme Court "require[d] that Martinez be limited to regulations concerning outgoing correspondence." Id. at 413. Outgoing mail, in contrast to incoming mail, "did not, by its very nature, pose a serious threat to prison order and security," id. at 411; such correspondence "cannot reasonably be expected to present a danger to the community inside the prison." Id. at 412.

Ms. Bailey's claim therefore presents a difficult question of constitutional law: given that Martinez applies to restrictions on outgoing mail, and Turner applies to restrictions on

incoming mail, which standard applies to restrictions on electronic messaging that affect both incoming and outgoing correspondence?  The government fails to even engage with this important question in its brief.  Ms. Bailey argues that Martinez applies because the BOP's TRULINCS blocks have the effect of restricting outgoing correspondence.  Pl.'s Br. at 24-25. But the answer is not so simple.  Many BOP actions and regulations affect outgoing correspondence even though they are not direct regulations of such correspondence.  Consider, for example, the BOP's rule that "an inmate may not act as a reporter."  See Gov't Br. at 11.  On its face, this rule would seem to bar an inmate from sending outgoing correspondence asking for interviews.  Or consider a lockdown at a facility that prevents inmates from using computers for some period of time.  This action would temporarily restrict inmates' ability to use TRULINCS to send outgoing messages.  Does Martinez apply in these situations?  Or does Martinez only apply to those regulations and actions that, like the California regulations at issue in Martinez itself, focus on outgoing correspondence?  See Thornburgh v. Abbott, 490 U.S. at 411-12, 412 n.11.

Another complication is that Martinez and Turner both considered BOP restrictions on postal mail.  And Thornburgh explained that Martinez was the right standard for outgoing mail because outgoing mail, by its nature, does not present significant safety concerns. Thornburgh v. Abbott, 490 U.S. at 411-12.  Electronic mail – able to be sent at rapid pace and to a wider audience – may not be as inherently safe.  Another district court, analyzing an inmate's challenge to the Georgia Department of Corrections' censorship of his outgoing electronic messages, noted that which standard to apply was "a much tougher question than it appears at first blush."  Benning v. Dozier, Civil Action No. 18-0087, 2021 WL 1713333, at *1 (M.D. Ga. Apr. 30, 2021), rev'd on other grounds sub nom. Benning v. Comm'r, Georgia Dep't of Corr.,

71 F.4th 1324, 1338 (11th Cir. 2023).  In the end, the court applied <u>Turner</u> based on its conclusion that "email is just different."  <u>Id</u>.

But this Court need not decide today which standard applies to Ms. Bailey's First Amendment TRULINCS claim.  Even assuming that <u>Turner</u> – the standard urged by the government – applies, Ms. Bailey has met her burden to clearly show a likelihood of success on the merits with regard to most of the facilities at which she challenges the BOP's blocks to her TRULINCS messaging.  And even assuming that <u>Martinez</u> – the standard urged by Ms. Bailey – applies, she has not met her burden with regard to one of those facilities, U.S.P. Big Sandy.  The Court therefore will order Ms. Bailey's TRULINCS access restored at all facilities where she alleges she was blocked from TRULINCS except for Big Sandy.

### 1.  U.S.P. Big Sandy

The government has submitted evidence showing that, contemporaneous with its blocking of Ms. Bailey's TRULINCS access at U.S.P Big Sandy, Ms. Bailey forwarded messages from inmates at that facility to third parties at those inmates' request.  Gov't Ex. 3 at ECF 2-6.  This evidence consists of TRULINCS message exchanges between Ms. Bailey and Big Sandy inmates spanning December 11, 2022 through December 19, 2022.  <u>Id</u>.  The BOP blocked Ms. Bailey at Big Sandy on December 19, 2022.  Pl.'s Ex. 2; <u>see</u> Pl.'s Br. at 7-8.

These contemporaneous communications violated the BOP's TRULINCS rules, which provide that "[i]nmates may only communicate with approved persons on their contact lists for the purpose of" electronic messaging with the public, among other forms of communication, BOP TRUST FUND MANUAL § 14.10(c), at 133, and that "[i]nmates may only exchange emails with contacts who have accepted the inmate's request to communicate."  <u>Id</u>. § 14.10(c)(3), at 134.  The rules further state that "[i]f either an inmate <u>or a contact</u> attempts to

. . . forward inmate emails to an unauthorized address, . . . the Warden may remove the individual from participation in" TRULINCS.  Id. § 14.10(j)(6), at 138 (emphasis added).  In other words, an inmate may exchange TRULINCS messages only with those members of the public who are on their approved contact list.  A member of the public is not allowed to forward messages from an inmate to an individual who is not on the inmate's approved contact list.  The evidence submitted by the government shows that Ms. Bailey did exactly that at Big Sandy.  According to the BOP's rules, therefore, the warden at Big Sandy was authorized to block Ms. Bailey's TRULINCS access.

Ms. Bailey argues that the rule violations were a pretextual rationale for the TRULINCS block.  Pl.'s Reply at 13-14.  But she provides no direct evidence showing that the rule violations were not the BOP's real reason.  And the BOP has submitted evidence suggesting that the TRULINCS blocks at Big Sandy were, in fact, due to Ms. Bailey's rule violations.  A December 19, 2022 memorandum from a correctional official to the warden at Big Sandy – stamped, signed, and "[a]pproved" – lists Ms. Bailey's email address as a "text forward service" and requests that the email address be "blocked."  Gov't Ex. 6 [Dkt. No. 10-6].  In light of the evidence submitted by the government, the Court finds that Ms. Bailey has not met her burden to clearly show that she is likely to be able to prove at trial that the BOP's stated rationale was a pretext.  Because Ms. Bailey has not shown that she will be able to rebut the government's explanation for the TRULINCS block at Big Sandy, she has not shown a likelihood of success on her First Amendment TRULINCS claim with respect to that facility – even under the Martinez standard that she urges.

Under Martinez, the Court first evaluates the government's asserted interests.  The government maintains that its TRULINCS rules further the secure and orderly operations of

the BOP's facilities.  See Gov't Br. at 18-21.  It is beyond dispute that "security [and] order" are "important [and] substantial governmental interest[s] unrelated to the suppression of expression."  Procunier v. Martinez, 416 U.S. at 413.  The government's asserted interests therefore satisfy the first step of Martinez.

At the second step of the Martinez analysis, the Court asks whether the BOP's challenged action was sufficiently narrow, in light of the important government interests at stake, to warrant limiting the plaintiff's First Amendment rights.  Procunier v. Martinez, 416 U.S. at 413-14.  The action must be "generally necessary to protect" those interests, id. at 414; there must be a "close fit between the challenged regulation [or action] and the interest it purported to serve."  Thornburgh v. Abbott, 490 U.S. at 411.  Ms. Bailey argues that there was no "close fit" between the interests of order and security and the TRULINCS block at Big Sandy because none of the offending messages actually threatened order or security at Big Sandy.  Pl.'s Reply at 16.  She suggests that even if they did, the BOP should have blocked the individual messages that violated its rules instead of blocking her from exchanging messages with all of the inmates at the facility.  Id. at 13.

The Court disagrees.  The BOP's rule against third parties forwarding messages to individuals not on an inmate's approved contact list safeguards the BOP's ability to adequately monitor inmate messages.  This is because adequate monitoring requires knowledge not only of what a message says, but to whom the message is directed.  When a third party acts as an intermediary for an inmate to message an unapproved contact, the BOP's monitoring ability is compromised.  The BOP need not show that the specific messages Ms. Bailey forwarded threatened security or order.  Martinez, by the Supreme Court's own instruction, "does not mean . . . that prison administrators may be required to show with certainty that adverse consequences

would flow from the failure to censor a particular" message.  Procunier v. Martinez, 416 U.S. at 414.

The First Circuit's decision in Stow v. Grimaldi, 993 F.2d 1002 (1st Cir. 1993), is instructive.  There, an inmate brought a First Amendment challenge to a state prison's rejection of his sealed letters to a school.  Id. at 1003.  The prison required outgoing mail to be submitted for inspection in unsealed envelopes.  Id.  Applying Martinez, the First Circuit rejected the inmate's argument that his particular letters presented no security problem because they did not contain criminal activity or escape plans.  Id. at 1004.  "Were the institution not a legitimate one or were the school's mail room employee in cahoots with plaintiff," the court explained, "security concerns could well be implicated."  Id.  Here, were the contacts to which Ms. Bailey forwarded messages involved in criminal activity, or were they coordinating with inmates, the message forwarding at Big Sandy could have jeopardized security.

Ms. Bailey's argument that the BOP should have blocked individual messages instead of blocking her from the entirety of Big Sandy is similarly unavailing.  The Martinez standard does not "subject[] the decisions of prison officials to a strict 'least restrictive means' test."  Thornburgh v. Abbott, 490 U.S. at 411.  Instead, it "require[s] no more than that a challenged regulation be 'generally necessary.'"  Id. (quoting Procunier v. Martinez, 416 U.S. at 414).  Blocking only individual messages would not prevent contacts from forwarding messages in the future.  Even if blocking individual messages that violated TRULINCS rules were a less restrictive means of achieving the same objective that the BOP sought through blocking Ms. Bailey facility-wide, the Martinez analysis would still favor the government.  The BOP's rule that a contact who forwards TRULINCS messages gets blocked from using

TRULINCS at the facility where those messages originated is generally necessary to preserve security and order.  See Stow v. Grimaldi, 993 F.2d at 1004.

With respect to the BOP's actions at U.S.P. Big Sandy, Ms. Bailey has not shown that her First Amendment TRULINCS claim is likely to succeed.  Her request for a preliminary injunction on the basis of this claim therefore fails.

### 2.  Other BOP Facilities

#### a.  Likelihood of Success on the Merits

In contrast to Big Sandy, the government has submitted no contemporaneous evidence showing that Ms. Bailey violated TRULINCS rules at the other six facilities for which the BOP has blocked her access.  The government repeatedly cites a message that Ms. Bailey sent to an inmate in which she references "all of those instances when I passed messages between you and others" and states, "[w]e have to be more aware of the[ BOP's] rules."  Gov't Ex. 1; see Gov't Br. at 1-2, 7, 10.  But the plain text of this message does not show willful violations of the BOP's rules, as the government asserts.  Pl.'s Reply at 15; see Gov't Br. at 10.  Instead, it reflects Ms. Bailey's lack of awareness of those rules.  And even if this message did show that Ms. Bailey was forwarding messages to third parties on behalf of one inmate, the message gives no indication that the inmate resides at one of the seven facilities where the BOP has blocked Ms. Bailey's access.

The other messages that the government attaches likewise fail to show that Ms. Bailey violated the BOP's rules contemporaneous with the TRULINCS blocks at facilities other than U.S.P. Big Sandy.  The government asserts that Ms. Bailey paid inmates for their correspondence.  Gov't Br. at 11-12.  But only one of the exchanges discussing payments represents correspondence with an inmate at a facility other than Big Sandy, see Gov't Ex. 4,

and the plain meanings of the messages involved do not support the government's argument that Ms. Bailey was giving inmates "compensation or anything of value for correspondence with the news media." <u>See</u> Gov't Br. at 11 (quoting BOP program statement on correspondence).  Even putting aside the question of whether Ms. Bailey is a member of the "news media," <u>see</u> Pl.'s Reply at 17, the exchange concerns an inmate's request for Ms. Bailey to promote his book so that he can "generate capital without selling dope or participating in anything negative."  Gov't Ex. 4.  It does not concern compensation for correspondence of any sort.  In addition, these messages – as well as the one example of Ms. Bailey transmitting messages between inmates, <u>see</u> Gov't Ex. 2 – come from May 2024.  This was over a year after some of the TRULINCS blocks and nearly two months after the last block at issue.  It was also after Ms. Bailey filed this lawsuit.

The Court notes that if the government genuinely believed that the TRULINCS blocks at these facilities were based on Ms. Bailey's "egregious [and] widespread" rule violations, Gov't Br. at 6, it should not have been hard to present contemporaneous evidence in support of that claim.  According to the BOP's own program statement, documentation supporting TRULINCS blocks are kept in the BOP's electronic system.  BOP TRUST FUND MANUAL § 14.10(c)(3)(c), at 135.  And the authority to restrict TRULINCS "may not be delegated below the Associate Warden level."  <u>Id</u>. § 14.2, at 126.  The government therefore should have been able to search the BOP system for documentation and provide sworn declarations from the wardens or associate wardens of the relevant facilities.  But the government submits no contemporaneous messages, no documentation, and no declarations from wardens or associate wardens at these facilities.

In contrast, Ms. Bailey does provide evidence that the BOP blocked her TRULINCS access at the facilities other than Big Sandy in order to suppress her advocacy and stem her exchanges of information with inmates.  The BOP blocked Ms. Bailey from electronically messaging inmates at F.C.C. Hazelton around November 2, 2023.  See Pl.'s Ex. 13.  This was approximately a month after a letter from U.S. Senators citing Ms. Bailey's advocacy seemingly led the U.S. Attorney's Office to establish a hotline for information related to civil rights abuses at the facility.  See Pl.'s Ex. 12; Pl.'s Ex. 14.  And it was only weeks after Ms. Bailey used TRULINCS messaging to discuss with Hazelton inmates recent civil rights abuses and what she believed were attempts by the BOP to frustrate use of the U.S. Attorney hotline.  Compl. ¶¶ 91-93, 98-99.  The BOP blocked Ms. Bailey at F.C.I. Ray Brook and U.S.P. Beaumont around the time that she exchanged TRULINCS messages with inmates discussing conditions at those facilities and engaged in other advocacy for reform at the same facilities.  See Pl.'s Br. at 6, 10.  And the BOP blocked Ms. Bailey at U.S.P. Marion and F.C.I. Pekin around the time that she sent a More Than Our Crimes newsletter to inmates at those facilities.  See id. at 18.

Based on the evidence before the Court, Ms. Bailey has made a clear showing that her First Amendment TRULINCS claim is likely to succeed with respect to these facilities – even under the Turner standard that the government urges.  Cf. Miller v. Marshall, 682 F. Supp. 3d 559, 589-91 (S.D. W. Va. 2023) (holding that an inmate was likely to succeed on his First Amendment claims under Turner).  The "most important" factor under this standard is whether the BOP's actions are rationally related to a legitimate and neutral governmental objective.  Hatim v. Obama, 760 F.3d 54, 59 (D.C. Cir. 2014).  But there is no evidence showing that the BOP blocked Ms. Bailey at these facilities in order to preserve their order and security, or for

any other objective unrelated to suppressing expression.  See Thornburgh v. Abbott, 490 U.S. at 415-16.  There is only evidence suggesting that the BOP did so in order to suppress Ms. Bailey's advocacy critical of the BOP and her conversations with inmates gathering information to support that criticism.  Such censorship has no rational relationship to order and security.

The other three Turner factors fail to overcome the government's lack of success on the first.  As to the second factor, while phone calls and in-person visits provide "alternative means" for Ms. Bailey to communicate with inmates, see Turner v. Safley, 482 U.S. at 90, these methods are significantly slower and less reliable than TRULINCS messages.  See Compl. ¶ 143. The government argues that the third factor – the impact accommodating the constitutional right at issue would have inside the facility, see Turner v. Safley, 482 U.S. at 90 – points in its favor because allowing Ms. Bailey TRULINCS access would pose a significant monitoring burden on the BOP.  See Gov't Br. at 15.  But this burden is likely overstated given the BOP's consistent monitoring of TRULINCS messages and the lack of evidence that Ms. Bailey's TRULINCS use has had a negative impact inside any facility.  See Pl.'s Reply at 14.  Finally, although Ms. Bailey has not suggested any "obvious, easy alternative" to blocking her TRULINCS access that could accommodate her First Amendment rights "at de minimis cost to valid penological interests," see Turner v. Safley, 482 U.S. at 90-91, the Court notes that the obvious low-cost alternative to any ongoing censorship is for the BOP to stop censoring Ms. Bailey's communications.  Ms. Bailey has shown that she is likely to succeed on the merits of her First Amendment TRULINCS claim at all facilities she mentions except for Big Sandy.

b.  Irreparable Harm

Given that Ms. Bailey has shown a likelihood of success on the merits of her First Amendment TRULINCS claim with respect to all of the BOP facilities at issue other than U.S.P.

Big Sandy, she has also shown irreparable harm.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 19 (2020) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion)); accord Pursuing Am.'s Greatness v. Fed. Election Comm'n, 831 F.3d 500, 511 (D.C. Cir. 2016).  Ms. Bailey's harm is ongoing because the BOP continues to block her from communicating with inmates via TRULINCS.  See Pl.'s Br. at 37-38.

The government argues that Ms. Bailey has not shown irreparable harm because she has alternative means of communicating with inmates.  Gov't Br. at 9.  At oral argument, the government clarified its position, which is that under this Circuit's precedent Ms. Bailey must make a separate factual showing of irreparable harm even if the Court determines that she is likely to succeed on her First Amendment claim.  Not so.  A plaintiff who wishes to show irreparable harm on the basis of the loss of their First Amendment freedoms must show that their First Amendment freedoms are actually lost – or that they imminently will be.  Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 301 (citing Nat'l Treasury Emps. Union v. United States, 927 F.2d 1253, 1254-55 (D.C. Cir. 1991)).  But "[w]here a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed."  Id. (quoting Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 349-50 (2d. Cir. 2003)).  Here, Ms. Bailey alleges injury from a direct limitation on her speech.  And she has shown that her claim is likely to succeed with respect to the BOP facilities other than Big Sandy. This means that she is likely to be able to show that she lost her First Amendment-protected ability to exchange electronic messages with inmates at those facilities, and that the BOP took that ability away without a constitutionally sufficient reason.  Because the BOP continues to

prevent her from exchanging electronic messages with inmates at those facilities, she has shown the actual and ongoing loss of her First Amendment freedoms.

### c.  Equities and Public Interest

The remaining preliminary injunction factors – the balance of the equities and assessment of the public interest – weigh in Ms. Bailey's favor.  These factors "'merge when,' as here, 'the Government is the opposing party.'"  Karem v. Trump, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)).  There is significant public interest in the sort of insight into prison conditions and abuses that More Than Our Crimes provides.  See Pell v. Procunier, 417 U.S. 817, 831 n.7 (1974) ("[T]he conditions in this Nation's prisons are a matter that is both newsworthy and of great public importance.").  On the other hand, the government's arguments about Ms. Bailey's TRULINCS use endangering safety at facilities other than Big Sandy are conjectural.  See Pl.'s Reply at 24.  A preliminary injunction restoring Ms. Bailey's TRULINCS access at the six facilities other than U.S.P. Big Sandy therefore is appropriate.

### B.  *First Amendment – Retaliation*

The government cannot circumvent the First Amendment by retaliating against those who have spoken instead of directly restricting their speech.  "If an official takes adverse action against someone based on th[e] forbidden motive [of retaliation for protected speech], . . . the injured person may generally seek relief by bringing a First Amendment claim."  Nieves v. Bartlett, 587 U.S. 391, 398 (2019).  In this Circuit, a First Amendment retaliation claim requires a plaintiff to show that:

> (1) he engaged in conduct protected under the First Amendment;
> (2) the defendant took some retaliatory action sufficient to deter a

> person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him.

Aref v. Lynch, 833 F.3d 242, 258 (D.C. Cir. 2016) (quoting Banks v. York, 515 F. Supp. 2d 89, 111 (D.D.C. 2007)).

Ms. Bailey argues that the BOP has engaged in unconstitutional First Amendment retaliation by punishing her inmate sources for their communication with her. See Pl.'s Br. at 25-30. She explains that the BOP's actions have harmed her because they have made it harder and more dangerous for her to speak to her inmate sources. Id. at 28-29. Ms. Bailey has not shown, however, that she is likely to succeed on the third element of the test. "To satisfy the causation link, a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action." Aref v. Holder, 774 F. Supp. 2d 147, 169 (D.D.C. 2011) (emphasis added) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). While circumstantial evidence can sometimes suffice, see id., the causation standard is strict. "'[B]ut-for' cause[] mean[s] that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Nieves v. Bartlett, 587 U.S. at 399 (quoting Hartman v. Moore, 547 U.S. at 260). It does not suffice for the plaintiff to show that she was harmed by government action taken in response to a third party's speech. See Hernandez v. Schaad, Civil Action No. 17-4055, 2017 WL 6731624, at *3 (N.D. Cal. Dec. 29, 2017) (dismissing inmate plaintiff's First Amendment retaliation claim because "Plaintiff alleges that the adverse actions are because of another prisoner's protected conduct and not, as required for a First Amendment retaliation claim, because of Plaintiff's protected conduct.").

Through declarations from inmates, Ms. Bailey presents evidence that the adverse actions the BOP took against her inmate sources may have been caused by the speech of those

inmates.  The accounts contained in these declarations – if accurate – are troubling.  See, e.g., Decl. of Cory Perry ¶¶ 11-16 (BOP put inmate in Special Housing Unit for six months after questioning him about his communications with Ms. Bailey).  But no inmate is a plaintiff in this case.  To succeed on her First Amendment retaliation claim, Ms. Bailey must show that the BOP would not have taken adverse action absent her own speech.  See Nieves v. Bartlett, 587 U.S. at 399; Hernandez v. Schaad, 2017 WL 6731624, at *3.  In other words, she must show that either her advocacy or her expressions to inmates, either through TRULINCS or through other means, were the but-for cause of the BOP's retaliatory actions.  Based on the evidence currently before the Court – even assuming the BOP's actions sufficiently harmed Ms. Bailey – it is more likely that the BOP's actions were motivated by the inmates' speech describing prison conditions and official abuses rather than by Ms. Bailey's speech.

The Court makes no determination as to whether Ms. Bailey is likely to succeed on the second element of the test – whether a person of ordinary firmness would be deterred from speaking again.  But the Court disagrees with Ms. Bailey's assertion that this element "merely require[es] something more than a de minimis injury" to a plaintiff.  See Pl.'s Br. at 27. Instead, the element necessitates a contextual inquiry into whether the government's action would deter "a person of ordinary firmness in plaintiff's position."  Aref v. Lynch, 833 F.3d at 258 (emphasis added) (quoting Banks v. York, 515 F. Supp. 2d at 111).  It is true, as Ms. Bailey points out, that this Circuit has found that inmates' "small" "pecuniary losses," Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996), and reclassification and transfer, Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 585-86 (D.C. Cir. 2002), met the requirement.  But key to these decisions was the fact that it was an inmate alleging the retaliation.  For those whose hourly wages are measured in cents, and whose classification and facility determine nearly every aspect

of their day-to-day lives, these adverse actions could be quite significant.  Here, by contrast, Ms. Bailey must show that a person of ordinary firmness in her position – that of a nonincarcerated advocate – would be deterred from speaking by the BOP's actions against some of the inmates with whom she communicates.

Because Ms. Bailey has not shown that she is likely to succeed on each necessary element of her First Amendment retaliation claim, the Court will deny her request for a preliminary injunction on the basis of this claim.

### C.  Fifth Amendment – Due Process

The Due Process Clause of the Fifth Amendment requires that no person be deprived of life, liberty, or property without due process of law.  See Mathews v. Eldridge, 424 U.S. 319 (1976).  "'The fundamental requisite of due process of law is the opportunity to be heard' at 'a meaningful time and in a meaningful manner.'"  Alaska Commc'ns Sys. Holdings, Inc. v. Nat'l Lab. Rels. Bd., 6 F.4th 1291, 1298 (D.C. Cir. 2021) (quoting Goldberg v. Kelly, 397 U.S. 254, 267 (1970)).  The Fifth Amendment requires only that a person receive his or her due process, not every procedural device that he or she may claim or desire.  Kropat v. F.A.A., 162 F.3d 129, 132 (D.C. Cir. 1998).  Before assessing what process was due, the Court must "first determine whether constitutional safeguards apply at all, i.e., whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection."  Reeve Aleutian Airways, Inc. v. United States, 982 F.2d 594, 598 (D.C. Cir. 1993).

Ms. Bailey argues that she has a protected liberty interest in uncensored communication with inmates.  Pl.'s Br. at 30-31.  The government takes the position that Ms. Bailey has no protected liberty interest in "her preferred manner of email communication."  Gov't Br. at 16.  The government's position, however, is untenable in light of Martinez, which

24

expressly held that "[t]he interest of prisoners and their correspondents in uncensored

communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest

within the meaning of the Fourteenth Amendment." Procunier v. Martinez, 416 U.S. at 418.[4]

While a literal reading of the Supreme Court's due process holding in Martinez would be binding

only as to postal mail, there is no principled basis on which to distinguish a liberty interest in

uncensored postal mail from a liberty interest in uncensored electronic mail.  See Benning v.

Comm'r, Georgia Dep't of Corr., 71 F.4th at 1330-31 ("[T]he [due process] rationale of Martinez

is concerned with correspondence from inmates, regardless of the form (or medium) the

correspondence takes.").  The government further argues that Ms. Bailey has no protected liberty

interest because the BOP program statement calls TRULINCS a "privilege."  Gov't Br. at 16.

But as Ms. Bailey correctly argues in reply, the BOP cannot "unilaterally opt out of these

constitutional requirements by characterizing TRULINCS as a 'privilege.'"  Pl.'s Reply at 17.

"For over 50 years the Supreme Court has 'fully . . . rejected the wooden distinction between

"rights" and "privileges" that once seemed to govern the applicability of procedural due process

rights.'"  Benning v. Comm'r, Georgia Dep't of Corr., 71 F.4th at 1332 (alteration in original)

(quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571 (1972)).

　　　　Given that Ms. Bailey has a protected liberty interest in uncensored

communication via TRULINCS, the important question is what process she was owed by the

BOP.  Ms. Bailey does not assert that she was owed process before the BOP blocked her

---

[4]　　　The fact that Ms. Bailey's due process claim arises under the Fifth Amendment
and not the Fourteenth Amendment does not change the application of Martinez.  See Mazaleski
v. Treusdell, 562 F.2d 701, 709 n.22 (D.C. Cir. 1977); see also Perrier-Bilbo v. United States,
954 F.3d 413, 434 (1st Cir. 2020) ("While the Supreme Court has not clearly defined 'liberty' in
the Fifth Amendment Due Process Clause context, . . . we look to the Supreme Court's
interpretation of 'liberty' in the Fourteenth Amendment context for guidance.").

TRULINCS access.  Instead, she argues that the BOP failed to give her "a 'reasonable opportunity' to appeal" the blocks.  Pl.'s Br. at 33 (quoting Procunier v. Martinez, 416 U.S. at 418).  The government responds that the procedures given to Ms. Bailey were sufficient because, after she appealed the Big Sandy block and sent a letter to the Mid-Atlantic Regional Director, she was then given a reason for the block – that her email address was being used to forward inmate messages to third parties.  Gov't Br. at 16; see Pl.'s Ex. 5.  With regard to all facilities except Big Sandy, the Court need not determine at this stage and on this limited record whether Ms. Bailey received sufficient process because the Court will independently award injunctive relief on the basis of Ms. Bailey's First Amendment claim.  With regard to Big Sandy, it is possible that Ms. Bailey will be able to make out a due process claim.  Despite multiple requests, Ms. Bailey was never shown the messages that caused the BOP to block her from TRULINCS at that facility.  See Pl.'s Ex. 3; Pl.'s Ex. 6 [Dkt. No. 2-2 at ECF 54-55].

In the end, the Court concludes that even if Ms. Bailey is likely to succeed on her due process claim with respect to Big Sandy, she has not demonstrated irreparable harm.  Now, through litigating her motion for a preliminary injunction, she has received from the government messages that show the rule violations on the basis of which she was blocked.  See Gov't Ex. 3 at ECF 2-6.  Ms. Bailey has finally, and belatedly, received at least the process she was due.  See Goldberg v. Kelly, 397 U.S. at 270 ("[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." (quoting Greene v. McElroy, 360 U.S. 474, 496 (1959))).  And she has not clearly shown ongoing harm from a potential Fifth Amendment violation.  For this reason, Ms. Bailey is not entitled to preliminary injunctive relief on the basis of her due process claim.

*D.  Administrative Procedure Act*

Ms. Bailey asks the Court to award a preliminary injunction on the basis of her APA claims.  Pl.'s Br. at 35.  She argues that the BOP's decisions to block her TRULINCS access were arbitrary and capricious because the BOP did not adequately explain the rationale for the blocks, and that the BOP failed to articulate a rational connection between the facts of Ms. Bailey's messages and the blocks.  Id. at 35-36.  The government responds that the BOP's actions are not reviewable under the APA both because administration of TRULINCS is "committed to agency discretion by law" and because APA review of the actions is barred by a separate statute.  Gov't Br. at 17-19.  For the first argument, the government points to 18 U.S.C. § 4042(a), which gives the BOP "charge of the management and regulation of all Federal penal and correctional institutions."  18 U.S.C. § 4042(a).  For the second, the government points to 18 U.S.C. § 3625, which provides that the relevant sections of the APA "do not apply to the making of any determination, decision, or order under" the subchapter of the U.S. Code labeled "Imprisonment."  Id. § 3625; see id. §§ 3621-26.

The Court will not, at this stage and on this limited record, address the merits of Ms. Bailey's APA claims.  It is not clear to the Court that a discretionary decision by a warden or other correctional official to block an individual from TRULINCS is the type of agency action that implicates the APA at all, and the parties have not briefed the issue.  See 5 U.S.C. § 551(13) (defining "agency action" subject to APA review as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act").  Although Ms. Bailey asserts that the BOP's program statements provide the standard by which to measure the reasonableness of the TRULINCS blocks, Pl.'s Reply at 21, she does not cite any case that reviews a correctional official's decision for compliance with BOP policy.

The Court is skeptical of the government's statutory argument against reviewability.  The bar to review under 18 U.S.C. § 3625 applies only to orders under the relevant subchapter – which governs, among other things, the place of imprisonment, inmate risk assessment, and inmate medical care, id. § 3621, as well as temporary and permanent transfer and release.  Id. §§ 3622-24.  TRULINCS falls into none of these categories.  Tellingly, in making its other reviewability argument, the government asserts that the BOP's authority to administer TRULINCS comes from a different section of the U.S. Code – one that is not part of the "Imprisonment" subchapter.  See Gov't Br. at 18-19 (citing 18 U.S.C. § 4042(a)).  If Section 4042(a) really is the source of the BOP's TRULINCS authority, then a TRULINCS restriction is not a "determination, decision, or order under" Sections 3621 through 3626.

Neither party has provided adequate briefing on the nuanced issues involved in Ms. Bailey's APA claims, and both parties should do so at the motion to dismiss or summary judgment stage of the litigation.  The Court will not award preliminary injunctive relief on the basis of the plaintiff's APA claims.

### E.  Scope of Injunction

Ms. Bailey has shown her entitlement to a preliminary injunction with respect to one of her claims – the First Amendment TRULINCS claim – with respect to the BOP facilities she identifies other than U.S.P. Big Sandy.  The only irreparable harm Ms. Bailey has clearly shown is the loss of her First Amendment freedom to correspond with inmates at the six facilities at issue other than Big Sandy.  The Court therefore will order that the BOP restore Ms. Bailey's TRULINCS access at those facilities.  In order to ensure that Ms. Bailey's TRULINCS access is not unconstitutionally blocked during the pendency of this suit, the Court will also prohibit the BOP from blocking Ms. Bailey's TRULINCS communication with inmates at those facilities

absent a specific, factual determination of misconduct by Ms. Bailey or the inmate that is timely communicated to Ms. Bailey in writing. See Pl.'s Mot. at 1. The Court will deny the other preliminary relief sought by Ms. Bailey.[5]

IV.   CONCLUSION

For the foregoing reasons, Ms. Bailey's Motion for Preliminary Injunctive Relief [Dkt. No. 2] is hereby GRANTED IN PART and DENIED IN PART. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 6|28|24

---

[5]      The Court will not require Ms. Bailey to post any bond. While the Federal Rules of Civil Procedure provide that the Court may grant a motion for a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," FED. R. CIV. P. 65(c), "[c]ourts in this Circuit have found the Rule 'vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond,' including the discretion to require no bond at all." Simms v. D.C., 872 F. Supp. 2d 90, 107 (D.D.C. 2012) (citation omitted) (second alteration in original) (quoting DSE, Inc. v. United States, 169 F.3d 21, 33 (D.C. Cir. 1999)). Here, Ms. Bailey asks the Court to use this discretion to require no bond, on account of the lack of financial harm that will be inflicted on the government by the injunction and the fact that the alleged violations are constitutional. Pl.'s Br. at 40-41. Because Ms. Bailey's arguments are sound and the government offers no response, the Court will not require a bond.